UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAIME GUARTAZACA SUMBA, | |
| Petitioner, | No. 1:25-CV-13034 |
| v. | Judge Edmond E. Chang |
| BRANDON CROWLEY, Jail Commander for Clay County Detention Center,[1] | |
| Respondent. | |

**MEMORANDUM OPINION AND ORDER**

Jaime Guartazaca Sumba, a citizen of Ecuador, is being detained without an opportunity to seek release via a bond hearing in front of an immigration judge. R. 1, Pet. ¶¶ 19, 21, 25.[2] He petitions for a writ of habeas corpus under 28 U.S.C. § 2241, asking the Court to order the government either to give him a bond hearing or to release him immediately.[3] *Id.* ¶ 8. For the following reasons, the Court grants the petition in general, though the relief is the issuance of a conditional writ requiring a bond hearing by a date certain rather than immediate release.

---

[1] Because "the default rule is that the proper respondent is the warden of the facility where the [petitioner] is being held," *Gamboa v. Daniels*, 26 F.4th 410, 414 (7th Cir. 2022) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)), the Court substitutes Brandon Crowley as the proper respondent under Civil Rule 25(d). *See* R. 7, Status Report at 2.

[2] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[3] This Court has subject matter jurisdiction over this case under 28 U.S.C. § 2241, which applies generally to habeas writs. As explained below, no immigration-specific statute removes the petition from the jurisdictional grant.

## I. Background

Guartazaca Sumba is a citizen and native of Ecuador who lives in Chicago, Illinois, after entering the country without inspection. Pet. ¶¶ 19–20; R. 9, Resp. at 1. On October 24, 2025, he was issued a notice to appear for removal proceedings and was arrested by immigration authorities pursuant to an administrative warrant. Status Report at 1. Initially held at Broadview Detention Center in Broadview, Illinois, Guartazaca Sumba has since been moved to Clay County Detention Center in Brazil, Indiana. *Id.* at 1–2. He currently is not scheduled to appear before an immigration judge, *id.*, and he remains detained without the opportunity for a bond hearing, Pet. ¶¶ 25–26.

Guartazaca Sumba believes that his mandatory detention is unlawful, so he filed this petition for a writ of habeas corpus while detained at Broadview. Status Report at 1; Pet. ¶ 5. He contends that the government's decision to detain him under a particular immigration-inspection statute, 8 U.S.C. § 1225(b)(2)(A), is legal error that violates the Immigration and Nationality Act as well as the Fifth Amendment's Due Process Clause. Pet. ¶¶ 51–61, 100–01. And Guartazaca Sumba argues that he instead should be given a bond hearing consistent with 8 U.S.C. § 1226(a)(2). *Id.* ¶¶ 56, 61.

## II. Legal Standard

A petition for writ of habeas corpus is the proper vehicle for petitioners who contend that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioners bear the burden of showing

that their detention is unlawful. *Ochoa Ochoa v. Noem*, 2025 WL 2938779, at *2 (N.D. Ill. Oct. 16, 2025) (citing *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

### III. Analysis

This case—and many others like it—is a result of a recent decision by the Board of Immigration Appeals, *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025). Like here, *Yajure Hurtado* concerned whether the government had correctly invoked § 1225(b)(2)(A) to detain an alien, or instead if the alien should be considered detained under § 1226—which would at least give the alien a chance at a bail hearing. *Id.* at 218–20. Before jumping into the merits of the statutory-interpretation debate, it is worth noting that the Board's interpretation of the relevant statutes does not hold outsize weight: "agencies have no special competence in resolving statutory ambiguities. Courts do." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400–01 (2024). And courts have an "obligation to independently interpret the statute." *Id.* at 400.

More than a dozen other cases in this district have confronted the government's mandatory-detention stance that Guartazaca Sumba challenges. *See, e.g., Ochoa Ochoa*, 2025 WL 2938779; *H.G.V.U. v. Smith*, 2025 WL 2962610 (N.D. Ill. Oct. 20, 2025); *Miguel v. Noem*, 2025 WL 2976480 (N.D. Ill. Oct. 21, 2025); *Padilla v. Noem*, 2025 WL 2977742 (N.D. Ill. Oct. 22, 2025); *Patel v. Crowley*, 2025 WL 2996787 (N.D. Ill. Oct. 24, 2025); *Sanchez v. Olson*, 2025 WL 3004580 (N.D. Ill. Oct. 27, 2025); *Corona Diaz v. Olson*, 2025 WL 3022170 (N.D. Ill. Oct. 29, 2025); *Loza Valencia v. Noem*, 2025 WL 3042520 (N.D. Ill. Oct. 31, 2025); *Rosales Ponce v. Olson*, 2025 WL 3049785 (N.D. Ill. Oct. 31, 2025); *Flores v. Olson*, 2025 WL 3063540 (N.D. Ill. Nov. 3, 2025);

*Galvis Cortes v. Olsen*,[4] 2025 WL 3063636 (N.D. Ill. Nov. 3, 2025); *D.E.C.T. v. Noem*, 2025 WL 3063650 (N.D. Ill. Nov. 3, 2025); *Arizmendi v. Noem*, 2025 WL 3089107 (N.D. Ill. Nov. 5, 2025); *Mirzoev v. Olson*, 2025 WL 3101969 (N.D. Ill. Nov. 6, 2025); *Pacheco Carrillo v. Noem*, 2025 WL 3101993 (N.D. Ill. Nov. 6, 2025); *Garcia Rios v. Noem*, 2025 WL 3124173 (N.D. Ill. Nov. 7, 2025); *Munoz Arredondo v. Olson*, 2025 WL 3124149 (N.D. Ill. Nov. 7, 2025). The government here does not make any arguments not previously made; rather, the government stands on the brief that it submitted in an earlier case, *H.G.V.U.*, 2025 WL 2962610. Resp. at 1–2. In that brief, the government argued that federal courts lack subject matter jurisdiction to consider the petition and, even if there is jurisdiction, that the petition fails on its merits. *See generally* Resp. The Court addresses each argument in turn and sees no reason to depart from the consensus of the judges in this district.[5]

## A. Subject Matter Jurisdiction

The government first contends that the decision not to afford a bond hearing is unreviewable. The government cites several subsections of the Immigration and Nationality Act that strip the federal courts of jurisdiction to consider specific kinds

---

[4]The last name of the Chicago ICE field-office director appears to be misspelled in the caption of the cited case.

[5]At some point—perhaps now—litigants on the mandatory-detention issue ought to seek a way to get an across-the-board answer and also seek an answer from the Seventh Circuit. Both sides have important stakes: the liberty interests of the detainees and the government's interest in immigration enforcement. Given the stakes and given the volume of litigation over this one issue, it would make sense either for the government to appeal a bond-hearing decision as an issue that is (very) capable of repetition, yet evading review (or seek a stay to take an expedited appeal), or for a petitioner to seek class-action status for a case.

of challenges: 8 U.S.C. § 1252(a)(2)(B)(ii), (b)(9), and (g). R. 9-1, Exh. B, Resp. Br. at 3–9.[6] None apply here.

Start with § 1252(a)(2)(B)(ii), which insulates discretionary decisions from review. In particular, the subsection provides that "no court shall have jurisdiction to review … any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). But Guartazaca Sumba does not challenge a discretionary decision; instead, he challenges the government's improper refusal to make a discretionary decision *at all*. This Court thus is not stripped of jurisdiction over a challenge against the government's application of "the statutory framework that permits his detention without bail." *Demore v. Kim*, 538 U.S. 510, 517 (2003).

The government's argument under § 1252(b)(9)—which insulates non-final decisions arising out of removal proceedings—similarly fails. Section 1252(b)(9) bars "[j]udicial review of all questions of law and fact … arising from any action taken or proceeding brought to *remove* an alien from the United States" except via review of a final order of removal. 8 U.S.C. § 1252(b)(9) (emphasis added). In the government's view, Guartazaca Sumba's detention arises from an action taken to remove him. But the Supreme Court has rejected a virtually identical argument. Confronted with the "question[] of law … whether … certain statutory provisions require detention

---

[6]The Court cites to the brief in the government's Exhibit B based on its original pagination found at the bottom of each page.

5

without a bond hearing," six Justices held that federal courts had jurisdiction to decide that issue. *Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018) (plurality opinion); *see also id.* at 355 (Breyer, J., dissenting). In doing so, the plurality opinion in *Jennings* emphasized that the government's "expansive interpretation of § 1252(b)(9) would lead to staggering results" that nearly every downstream consequence of an initial removal decision would "aris[e] from" an action taken to remove someone. *Id.* at 293. So it was necessary to "eschew[] uncritical literalism." *Id.* at 293–94 (cleaned up).[7]

The third and final jurisdictional argument—which relies on a jurisdiction-stripping provision that applies to only three narrow categories of government action—also fails. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). This provision is "similarly narrow" to the scope of § 1252(b)(9), *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020), that is, the removal provision discussed just above in this opinion. Section 1252(g) "applies only to three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)

---

[7]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

(emphases in original) (cleaned up). Guartazaca Sumba's claim by contrast "concerns *detention* while the administrative process lasts," *see Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) (emphasis added), which is not the same as commencing proceedings, adjudicating cases, or executing a removal order. None of the cited jurisdiction-stripping provisions apply to this case, so it is time to move on to the merits.[8]

### B. Detention and Bond Hearing

On the merits, Guartazaca Sumba contends that he is entitled to a bond hearing because his detention arises under 8 U.S.C. § 1226—a type of detention that allows for a bond hearing—instead of under the mandatory-detention provision of 8 U.S.C. § 1225(b)(2)(A). Section 1225(b)(2)(A) requires mandatory detention for "an applicant for admission" who is "seeking admission" and "is not clearly and beyond a doubt entitled to be admitted." *See* 8 U.S.C. § 1225(b)(2)(A); Exh. B., Resp. Br. at 14–21. In the government's view, Guartazaca Sumba continues to "seek[] admission"

---

[8]It is worth noting that, aside from jurisdictional arguments, the government does not clearly state whether it adopts *all* of the arguments that the government made in the prior brief or only a subset that it lists again—those relating to jurisdiction and the merits. *See* Resp. at 1–2. The government thus may have waived the exhaustion argument made in *H.G.V.U.*; exhaustion is a non-jurisdictional, affirmative defense, and thus is waivable. *See Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987). But even if the government had expressly reiterated this argument, the Court would hold that it fails. Because the government concedes that no statutory requirement for exhaustion applies, Exh. B, Resp. Br. at 23, "sound judicial discretion governs." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (cleaned up). The refusal to conduct a bond hearing in this case flows largely from *In re Yajure Hurtado*, 29 I. & N. Dec. 216, so "appealing to the BIA would have been futile because the BIA had predetermined the statutory issue." *Gonzalez*, 355 F.3d at 1019 (cleaned up); *see also Ochoa Ochoa*, 2025 WL 2938779, at *2 n.4. Futility is a sound reason to refrain from requiring exhaustion.

until he is lawfully admitted and so long as he seeks to challenge his removal,[9] Exh. B., Resp. Br. at 14–19, and in any event "applicant for admission" and "seeking admission" are synonyms, *id.* at 19. The Court rejects that interpretation. Guartazaca Sumba is not "seeking admission" within the meaning of § 1225(b)(2)(A), and thus cannot be detained under that provision.

To start, the Court rejects as implausible the government's contention that two distinct terms in the same subparagraph—"applicant for admission" and "an alien seeking admission"—somehow bear the *same* meaning even though they are (obviously) *different* terms. Accepting the government's argument would violate the canon against surplusage, an "interpretive principle that every clause and word of a statute should have meaning." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (cleaned up). Although the rule disfavoring surplusage is not absolute, *see Stanley v. City of Sanford*, 606 U.S. 46, 56 (2025), the rule has considerable force here because its application "gives effect to every clause and word of a statute," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013) (cleaned up). And the canon "is strongest when an interpretation would render superfluous another part of the *same* statutory scheme." *Marx*, 568 U.S. at 386 (emphasis added). Indeed, not only are the two terms in the same statutory scheme, they are in the same subparagraph and in the same single sentence, and only seven words separate the two

---

[9]Guartazaca Sumba appears to agree that he may be considered an "applicant for admission." *See* Pet. ¶¶ 34, 41–43, 47, 49. He also does not claim that he is clearly and beyond a doubt entitled to admission. So the Court focuses on whether he can be considered as "seeking admission."

terms. "[A]n alien seeking admission" thus must mean something different than "applicant for admission." *See* 28 U.S.C. § 1225(b)(2)(A).

The plain meaning of "seeking admission" confirms its distinct nature. As other courts in this district have noted, the term—a present participle stated in the progressive tense—implies some ongoing, *affirmative* action by a person. *See, e.g.*, *Ochoa Ochoa*, 2025 WL 2938779, at *6; *Patel*, 2025 WL 2996787, at *7–8. The Supreme Court has noted the same: section 1225(b) "applies primarily to aliens seeking *entry* into the United States," whereas § 1226 applies to "aliens *already in the country*." *Jennings*, 583 U.S. at 289, 297 (emphases added). Guartazaca Sumba entered the country without inspection and so has already effectuated an entry. He thus has not remained in a continuous state of seeking or requesting admission *into* the country.

The government's position poses another surplusage problem. The government's reading of § 1225(b)(2)(A) as applying to all persons who unlawfully entered the country would render as surplus § 1226(c)(1)(E), a provision amended this year by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (codified as amended in scattered sections of 8 U.S.C.). Section 1226(c)(1)(E) requires mandatory detention for persons who (1) are inadmissible for, among other reasons, unlawfully entering the country; *and* (2) who were accused or convicted of certain crimes. As other courts have explained, the government's broad reading of § 1225(b)(2)(A) would eliminate any need for the second requirement in § 1226(c)(1)(E). *See, e.g.*, *H.G.V.U.*, 2025 WL 2962610, at *5; *Miguel*, 2025 WL 2976480, at *5. Put another way, those aliens who have *not* been convicted of the enumerated crimes must, by implication, be considered

9

detained under § 1226(a), which allows for a bond hearing. *See* 28 U.S.C. § 1226(a)(2). The government offers no response to this particular surplusage problem. Indeed, despite a prior adverse decision noting that the government "d[id] not address this apparent issue," *H.G.V.U.*, 2025 WL 2962610, at *5, the government re-submitted the exact same brief from that case without any additional argument, Resp. at 1.[10]

The government also invokes legislative purpose to support the mandatory-detention argument. To the government's way of thinking, mandatory detention prevents an outcome that Congress sought to avoid: affording comparatively more process to people who entered the country unlawfully than to people who attempt to enter lawfully at ports of entry. Exh. B, Resp. Br. at 19–20. This argument falls short for two reasons. First, as explained earlier in this opinion, the plain text of § 1225(b)(2)(A) and § 1226 supports Guartazaca Sumba's position, and a nontextual policy argument cannot override the plain text. *See Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 463 (2022) ("[W]e are not free to pave over bumpy statutory texts in the

---

[10]The government has not raised several related statutory-interpretation arguments that were offered by the Board of Immigration Appeals in *Yajure Hurtado*. In the Board's view, accepting Guartazaca Sumba's interpretation of the statute would create a surplusage issue in the other direction (though it is not clear why); meanwhile, the surplus that Guartazaca Sumba identifies is mere "redundanc[y]" for the purpose of emphasis. *In re Yajure Hurtado*, 29 I. & N. Dec. at 221–22. For the sake of completeness and given the Court's duty to interpret the statute independently, the Court notes that these arguments also are unpersuasive. Guartazaca Sumba's interpretation, consistent with the Supreme Court's decision in *Jennings*, creates no surplusage. Sections 1225(b)(2)(A) and 1226 each have clear applications: the former to persons seeking *entry* and the latter to persons who have *already* entered the country. *Jennings*, 583 U.S. at 289, 297. And the Board's it's-just-emphasis rationale is unpersuasive because "the same could be said of most superfluous language." *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 304 (2017).

name of more expeditiously advancing a policy goal." (cleaned up)). Second, even addressing the government's immigration-policy argument on its own terms, other immigration statutes *do* favor treating persons differently depending on whether they have established ties in the United States. *See, e.g.*, 8 U.S.C. § 1225(b)(1)(A)(iii) (permitting expedited removal for people who enter unlawfully and have *not* been physically present for more than two years); 8 C.F.R. § 241.4(f)(5) (considering as "[f]avorable factor[]" against continued detention whether detainee has "ties to the United States"). It is not inconceivable that immigration policy would view a person who has already entered the United States—even if not at a port of entry—as less of a flight risk and danger to the community if the person has established ties to this country after entering.

Finally, because resolution of Guartazaca Sumba's statutory argument affords him the bond hearing that he seeks, the Court need not discuss the merits of his constitutional claim about due process. *See Camreta v. Greene*, 563 U.S. 692, 705 (2011) ("[A] longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." (cleaned up)).

## IV. Conclusion

The Court grants Guartazaca Sumba's petition, R. 1. Because the Court holds that Guartazaca Sumba's detention under 8 U.S.C. § 1225(b)(2)(A) violates the Immigration and Nationality Act, Guartazaca Sumba is entitled to a bond hearing under 8 U.S.C. § 1226(a). *See* 8 C.F.R. §§ 1003.19, 1236.1(c)(8), (d). The Court thus issues a

conditional writ of habeas corpus, directing the Respondent, on or before November 17, 2025, either to afford Guartazaca Sumba a bond hearing that complies with federal laws and regulations or to release him under reasonable conditions of supervision. *See United States ex rel. Owens v. Duncan*, 2015 WL 5950124, at *2 (N.D. Ill. Oct. 13, 2015) (explaining conditional writs of habeas corpus).

The Court directs the parties to file a status report on or before November 18, 2025, that addresses Guartazaca Sumba's release status, whether he received a bond hearing, and the result of that bond hearing.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 9, 2025